1   Leonard M. Shulman – Bar No. 126349
    Lynda T. Bui – Bar No. 201002
2   Rika M. Kido – Bar No. 273780
    **SHULMAN HODGES & BASTIAN LLP**
3   100 Spectrum Center Drive, Suite 600
    Irvine, California 92618
4   Telephone:    (949) 340-3400
    Facsimile:    (949) 340-3000
5   Email:        lshulman@shbllp.com; lbui@shbllp.com;
                  rkido@shbllp.com
6
    Proposed Attorneys for Sam S. Leslie,
7   Chapter 7 Trustee

8                   **UNITED STATES BANKRUPTCY COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

10
    In re                                  Case No.  2:17-bk-10670-BR
11
    **J.D.E. ENTERPRISE CORPORATION**      Chapter 7
12  dba **SWEET HOME CARE,**
                                           **CHAPTER 7 TRUSTEE'S MOTION FOR
13  Debtor.                                ORDER:**

14                                         **(1) APPROVING SETTLEMENT AND
                                               COMPROMISE OF DISPUTES UNDER
15                                             FED. R. BANKR. PRO. 9019 BY AND
                                               BETWEEN CHAPTER 7 TRUSTEE, JENN
16                                             ENTERPRISE CORPORATION, ESTER
                                               SAIGO AND JASON EDQUILAG**
17
                                           **(2) APPROVING THE SALE OF PROPERTY
18                                             OF THE ESTATE PURSUANT TO 11
                                               U.S.C. § 363(b)(1), SUBJECT TO
19                                             OVERBIDS, COMBINED WITH NOTICE
                                               OF BIDDING PROCEDURES AND
20                                             REQUEST FOR APPROVAL OF THE
                                               BIDDING PROCEDURES UTILIZED; AND**
21
22                                         **(3) GRANTING RELATED RELIEF;**

23                                         **MEMORANDUM OF POINTS AND
                                           AUTHORITIES AND DECLARATION OF
24                                         SAM S. LESLIE IN SUPPORT THEREOF**

25                                         **Hearing Date:**
                                           Date:   August 15, 2017
26                                         Time:   10:00 a.m.
                                           Place:  Ctrm. 1668
27                                                  United States Bankruptcy Court
                                                    255 E. Temple Street
28                                                  Los Angeles, CA 90012

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

                                           1

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

1

2

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ................................................................ 4

II.     RELEVANT FACTS ........................................................................... 5

        A.      Commencement of the Instant Bankruptcy Case ...................................... 5

        B.      Commencement of the Brundage Action and Filings in State Court ................... 6

        C.      Removal of the Brundage Action to the Bankruptcy Court ........................... 7

        D.      Settlement and Sale of Transfer Claims ............................................. 8

        E.      Notice of Bidding Procedures ....................................................... 9

III.    ARGUMENT ...................................................................................... 10

        A.      Upon Approval by the Court, a Trustee May Compromise a Claim of the
                Estate ...................................................................................... 10

        B.      The Bankruptcy Court May Approve a Compromise is Fair and Equitable .......... 11

                1.      Probability of Success in Litigation ........................................ 12

                2.      Difficulties, if any, to be Encountered in the Matter of Collections .......... 13

                3.      The Complexity of the Litigation Involved, and the Expense,
                        Inconvenience, and Delay Necessarily Attending It .................................. 14

                4.      The Paramount Interest of the Creditors and the Proper Deference
                        to the Reasonable Views ........................................................... 14

        C.      There is a Good Business Reason for the Sale and the Sale is in the Best
                Interest of the Estate ...................................................................... 15

        D.      The Court has the Authority to Waive the Fourteen-Day Stay of Sale ............... 15

V.      CONCLUSION ................................................................................... 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Ahcom, Ltd. v. Smeding,*
    623 F.3d 1248 (9th Cir. 2010) ........................................................ 11

*In re Carla Leather, Inc.,*
    50 B.R. 764, 775 (S.D.N.Y. 1985)................................................... 11

*In re Energy Cooperative, Inc.,*
    886 F.2d 921, 927 (7th Cir. 1989) .................................................. 11

*In re Lionel Corp.,*
    722 F.2d 1063, 1069 (2d Cir. 1983)................................................ 15

*In re Walsh Construction, Inc.,*
    669 F.2d 1325, 1328 (9th Cir. 1992) .............................................. 12

*In re Wilde Horse Enterprises, Inc.,*
    136 B.R. 830, 841 (Bankr. C.D. Cal. 1991)................................... 15

*Martin v. Kale (In re A & C Properties),*
    784 F.2d 1377, 1380-81 (9th Cir. 1986) ........................................ 11

*Martin v. Robinson,*
    479 U.S. 854 (1986)......................................................................... 11

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson),*
    839 F.2d 610, 620 (9th Cir. 1988) ........................................... 11, 12

## <u>STATUTES</u>

11 U.S.C. § 363(b) .................................................................................. 15

11 U.S.C. § 544 ....................................................................................... 11

11 U.S.C. § 547 ....................................................................................... 11

11 U.S.C. § 548 ....................................................................................... 11

28 U.S.C. §157(b)(2)(A)......................................................................... 11

28 U.S.C. §157(b)(2)(O)......................................................................... 11

## <u>RULES</u>

Fed. R. Bankr. P. 6004(h) .................................................................. 15, 16

Federal Rule of Bankruptcy Procedure, Rule 9019(a)............................ 10

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

3

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES**:

Sam S. Leslie, the duly appointed, qualified and acting Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of J.D.E. Enterprise Corporation dba Sweet Home Care ("Debtor") brings this Motion for Order: (1) Approving Settlement and Compromise of Disputes Under Fed. R. Bankr. Pro. 9019 By and Between Chapter 7 Trustee, JENN Enterprise Corporation, Ester Saigo and Jason Edquilag; (2) Approving the Sale of Property of the Estate Pursuant to 11 U.S.C. § 363(b)(1), Subject to Overbids, Combined with Notice of Bidding Procedures and Request for Approval of the Bidding Procedures Utilized; and (3) Granting Related Relief ("Settlement/Sale Motion").   In support thereof, the Trustee respectfully represents as follows:

## I.    SUMMARY OF ARGUMENT

Through the Settlement/Sale Motion, the Trustee requests approval of the Settlement and Sale Agreement ("Settlement/Sale Agreement"), a true and correct copy of which is attached as **Exhibit "1"** to the Declaration of Sam S. Leslie ("Leslie Decl.") attached hereto.  The Trustee has received an offer from JENN Enterprise Corporation, Ester Saigo, and Jason Edquilag (collectively "Defendants," together with Trustee, the "Parties") to purchase the Transfer Claims[1] for the price of $15,000.00, subject to overbids.   Through the sale, the Trustee is expected to generate net proceeds of approximately $15,000.00 for the benefit of the Estate and its creditors.  In the event the purchase price is increased by a successful overbid, the estimated net proceeds will increase.

The Settlement/Sale Agreement also provides for mutual releases for any matter relating to the Transfer Claims.  As set forth below, the Trustee believes the interests of the creditors and the Estate are best served if this Court approves the proposed Settlement/Sale Agreement under the four factors set forth by *A and C Properties*.   The Settlement/Sale Agreement provides for a settlement of the Transfer Claims.  The expenses incurred were the Trustee to proceed with

---

[1] All capitalized terms are defined below.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

1  litigation regarding the Transfer Claims would most likely exceed any additional benefit that

2  might be achieved.  Settlement of the Transfer Claims results in certainty and is a benefit to the

3  Estate.  The Estate will receive $15,000.00, which allows for a distribution to unsecured creditors

4  and ceases the accrual of unnecessary administrative expenses, while eliminating litigation risks.

5  Therefore, based on the requirements under *A and C Properties*, on the Trustee's belief that good

6  cause exists, and on the Trustee's good business judgment, the Trustee respectfully requests the

7  Court approve the Settlement/Sale Motion.

8  ## II.    RELEVANT FACTS

9  ## A.    Commencement of the Instant Bankruptcy Case

10  On January 19, 2017, the Debtor filed a voluntary petition for relief under Chapter 7 of

11  the Bankruptcy Code, commencing Case No. 2:17-bk-10670-BR ("Petition Date").  (*See* Request

12  for Judicial Notice filed concurrently herewith ("RJN"), Exhibit ("Ex.") A)  The Debtor was in

13  the business of providing in-home care for senior citizens and appears to have stopped operating

14  in 2015.

15  Sam S. Leslie is the duly appointed, qualified and acting Chapter 7 Trustee for the

16  Debtor's Estate.  *Id.*

17  On its Schedule A/B, the Debtor does not list any real property and/or personal property

18  assets.  (*See* RJN, Ex. B)

19  On its Statement of Financial Affairs, Part 3, the Debtor lists a claim for "wages" as set

20  forth in a lawsuit entitled "*Brundage v. J.D.E. Enterprise Corporation, et. al.*," Case No.

21  BC607445 (the "Brundage Action"), which is pending in the Superior Court of California,

22  County of Los Angeles ("State Court").  *Id.*

23  On its Schedule E/F, the Debtor lists Virginia Brundage ("Plaintiff"), the plaintiff in the

24  Brundage Action, as a nonpriority unsecured creditor for the disputed amount of $250,000.00

25  (per the Complaint in the Brundage Action).  The only other claimant listed on the Debtor's

26  Schedule E/F is a State of California Employment Development Department claim for taxes in

27  an unknown amount.  *Id.*

28  ///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

5

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

**B.**    **Commencement of the Brundage Action and Filings in State Court**

On January 19, 2016, Plaintiff filed her initial Complaint ("Complaint") in the State Court, commencing the Brundage Action.  (*See* RJN, Ex. B)

On April 12, 2016, Plaintiff filed her First Amended Complaint ("FAC") in the Brundage Action.  *Id.*

On June 17, 2016, the Debtor filed its Answer to the FAC.  *Id.*

The Trustee is informed and believes that on October 19, 2016, Plaintiff and the Debtor attended a private mediation session.  The matter did not settle.  (*See* Leslie Decl. ¶ 4)

On November 29, 2016, Plaintiff filed her Amendment to Complaint seeking to add JENN to the FAC as Doe 1.  (*See* RJN, Ex. B)

The Trustee is informed and believes that in a series of email exchanges between the Plaintiff's and Debtor's respective counsel in January 2017, Plaintiff requested that the Debtor and its counsel stipulate to the filing of a Second Amended Complaint against the Debtor and the newly-added Defendants.  (*See* Leslie Decl. ¶ 5)  Plaintiff's proposed Second Amended Complaint ("SAC") alleged that the Defendants were liable for Plaintiff's damages as alter egos or successors of the Debtor.  (*See* RJN, Ex. E)

On January 20, 2017, the day after the commencement of the Debtor's Chapter 7 bankruptcy case, the Debtor filed a Notice of Automatic Stay in the State Court and served it on Plaintiff's counsel.  (*See* RJN, Ex. B)

On January 23, 2017, Plaintiff filed her Motion for Leave to Amend and File the SAC in the State Court.  (*See* RJN, Ex. E)  The Debtor and Defendants asserted that Plaintiff's filing was a violation of the automatic stay.  Specifically, the SAC proposed to amend the FAC by adding the following allegations:  (1) alter ego allegations, namely that the Debtor was the *alter ego* of JENN and that Saigo and Edquilag were the alter egos of both the Debtor and JENN; (2) successor liability allegations; and (3) allegations that the Debtor had fraudulently transferred its assets to the Defendants and, based on those transfers, that the Defendants are successors of the Debtor.  *Id.*  The Trustee asserts that all of these claims constitute property of the Estate and, therefore, that only the Trustee may pursue these claims (the "Transfer Claims").

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

6

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

**C.**    **Removal of the Brundage Action to the Bankruptcy Court**

On March 27, 2017, the Debtor removed the Brundage Action from the State Court to the United States Bankruptcy Court, commencing Adv. Case No. 2:17-ap-01213-BR (the "Adversary Proceeding").  (*See* RJN, Ex. F)

On March 31, 2017, the Bankruptcy Court filed a Notice of Status Conference and Order to Show Cause Re: Removal of Proceeding and Remand ("Remand OSC").    The Status Conference and the hearing on the Remand OSC were scheduled for May 16, 2017 at 2:00 p.m. *Id.*

On April 21, 2017, the Plaintiff filed a Motion for Remand ("Remand Motion") in the Adversary Proceeding.   (*See* RJN, Ex. G)In the Remand Motion, Plaintiff contends that the Brundage Action was improperly removed from the State Court and that the Brundage Action is not a "core proceeding" as it does not deal with matters concerning the administration of the Debtor's Estate. *Id.*

On May 2, 2017, the Debtor filed its Opposition to the Remand Motion ("Remand Opposition").   (*See* RJN, Ex. H)   The Debtor asserted in the Remand Opposition that the Transfer Claims raised in the SAC were issues over which the Bankruptcy Court appropriately must exercise its exclusive jurisdiction.   In other words, any determination that the Defendants are the equivalent of the Debtor would be a core proceeding and fundamental to the administration of the case. *Id.*

On May 11, 2017, the Plaintiff filed her Reply to the Remand Opposition ("Remand Reply").   (*See* RJN, Ex. I)  The Plaintiff asserted in her Remand Reply that her successor and alter ego liability allegations would have no effect on the administration of the Debtor's Estate because a successful adjudication of these allegations would result in the Defendants being directly liable to the Plaintiff, not to the Estate. *Id.*

///

///

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000\56

1    The Trustee is informed and believes that on May 16, 2017, at the Status Conference and

2  hearing on the Remand OSC, the Court noted that the fraudulent transfer allegations throughout

3  the SAC constituted "property of the estate" and that those issues needed to be evaluated by the

4  Trustee.  (*See* Leslie Decl. ¶ 6)  The Status Conference and hearing on the Remand OSC were

5  continued to July 25, 2017 at 10:00 a.m.  (*See* RJN, Ex. F)

6    On May 17, 2017, the Court filed an Order to Show Cause Why Case Should Not be

7  Dismissed for Bad Faith Filing in the bankruptcy case ("OSC re Dismissal").  (*See* RJN, Ex. J)

8  The OSC re Dismissal orders the Debtor to show cause in writing why its bankruptcy case

9  should not be dismissed for bad faith filing and abuse of the bankruptcy process.  In the OSC re

10  Dismissal, the Court noted that the bankruptcy filing seemed to have no legitimate purpose other

11  than to stay the Brundage Action for the benefit of other parties.  The hearing on the OSC re

12  Dismissal was also scheduled for July 25, 2017 at 10:00 a.m.  *Id.*

13    The Parties agree that it is in their best interest to resolve all disputes, claims, demands

14  and causes of action arising from or related to the Transfer Claims by way of settlement, rather

15  than through litigation, and therefore it is their intention and desire at this time to settle the

16  Transfer Claims in the manner and upon the terms and conditions set forth in the Settlement/Sale

17  Agreement, it being specifically understood and agreed that any and all acts which are to be

18  performed pursuant to the Settlement/Sale Agreement are not to be and will not be construed in

19  any way as a concession and/or admission by any of the Parties of the truth of any of the

20  allegations which have been made against any of the Parties.

21  **D.    Settlement and Sale of Transfer Claims**

22    The Trustee and the Defendant (collectively the "Parties") desire to settle and resolve all

23  disputes, claims, demands and causes of action related to the Transfer Claims by way of

24  settlement, rather than through litigation.  Subject to Court approval, the Parties entered into the

25  Settlement/Sale Agreement, a true and correct copy of which is attached as **Exhibit "1"** to the

26  Leslie Decl.

27  ///

28  ///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

8

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

1    Through the Settlement/Sale Agreement, which includes mutual releases of the Parties

2    with respect to any and all matters relating to the Transfer Claims, the Defendants shall pay to

3    the Trustee the sum of Fifteen Thousand Dollars ($15,000.00), subject to overbids, with an good

4    faith deposit of Two Thousand Dollars ($2,000.00) to be paid concurrent with the execution of

5    the Settlement/Sale Agreement and the remaining settlement amount of Thirteen Thousand

6    Dollars ($13,000.00) to be paid within fifteen (15) days after the entry of order approving this

7    Motion.    Given that the settlement/sale of the Transfer Claims is subject to overbids, it is

8    anticipated that the Trustee will receive the best and highest value for the Transfer Claims and

9    therefore the proposed purchase price is fair and reasonable.

10   **E.**    **Notice of Bidding Procedures**

11   The Trustee has determined that it would benefit the Estate to permit all interested parties

12   to receive information and bid for the Transfer Claims instead of selling the Transfer Claims to

13   the Buyer on an exclusive basis.    Accordingly, in order to obtain the highest and best offer for

14   the benefit of the creditors of this Estate, the Trustee also seeks Court approval of the following

15   bidding procedures ("Bidding Procedures"):

16   1.    Potential overbidders must bid an initial amount of at least $2,000.00 over the
17   Purchase Price or a total of at least **$17,000.00**.    Minimum bid increments thereafter shall be
     $500.00.  The Trustee shall have sole discretion to determine which overbid is best for the Estate
18   and will seek approval thereof from the Court.

19   2.    All Overbids must be delivered in writing and be received by the Trustee and his
     counsel, Rika M. Kido of Shulman Hodges & Bastian LLP, by no later than 5:00 p.m. on the
20   date that is **three (3) business days prior to the hearing on the Compromise Motion (as
     defined below).**

21   3.    All Overbids must be accompanied by a deposit ("Overbidder Deposit") in the
22   form of certified funds in the amount of at least Two Thousand Dollars ($2,000.00) payable to
     the Trustee ("Sam S. Leslie, Chapter 7 Trustee for the bankruptcy estate of J.D.E. Enterprise
23   Corporation dba Sweet Home Care") and delivered to the attention of Sam S. Leslie, Chapter 7
     Trustee, 3435 Wilshire Blvd., Suite 990, Los Angeles, California 90010.

24   4.    All Overbidders must also provide evidence of having sufficient specifically
25   committed funds to complete the transaction for the bid amount and such other documentation
     relevant to the Overbidders' ability to qualify as the buyer and to close the sale and immediately
26   and unconditionally pay the winning bid purchase price at the Closing.

27   5.    All Overbidders must seek to acquire the Estate's interest in the Transfer Claims
     on terms and conditions not less favorable to the Estate than the terms and conditions to which
28   the Defendants have agreed in seeking to purchase the Estate's interest in the Transfer Claims as
     set forth herein.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

9

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

6.      If one or more overbids are received, the final bidding round for the Estate's interest in the Transfer Claims shall be held at the hearing on the Compromise Motion (as defined below) in the Bankruptcy Court in order to allow all potential bidders to have the opportunity to overbid and purchase the Estate's interest in the Transfer Claims. At the final bidding round to be conducted before the Bankruptcy Court, the Trustee will seek entry of an order, *inter alia*, authorizing and approving the sale of the Estate's interest in the Transfer Claims to the bidder whom the Trustee, in the exercise of his business judgment, has determined to have made the highest and best offer to purchase the Estate's interest in the Transfer Claims, consistent with the Bidding Procedures set forth above (the "Successful Bidder"). The hearing on the Compromise Motion may be adjourned or rescheduled without notice, other than by an announcement of the adjourned date at the hearing on the Compromise Motion in the Bankruptcy Court.

7.      At the hearing on the Compromise Motion, the Trustee will seek entry of an order, *inter alia*, authorizing and approving the sale of the Estate's interest in the Transfer Claims to the Successful Bidder. The hearing on the Compromise Motion may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the bankruptcy court hearing on the Compromise Motion.

8.      In the event that the Successful Bidder fails to close the purchase and sale of the Estate's interest in the Transfer Claims within the time parameters approved by the Court, the Trustee shall retain the Successful Bidder's Deposit and will be released from his obligation to sell the Transfer Claims to the Successful Bidder. The Trustee may then sell the Transfer Claims to the first back-up bidder approved by the Court at the hearing on the Compromise Motion ("First Back-Up Bidder").

9.      In the event that the First Back-Up Bidder fails to close the purchase and sale of the Estate's interest in the Transfer Claims within the time parameters approved by the Court, the Trustee shall retain the First Back-Up Bidder's Deposit and will be released from his obligation to sell the Estate's interest in the Transfer Claims to the First Back-Up Bidder. The Trustee may then sell the Estate's interest in the Transfer Claims to the second back-up bidder approved by the Court at the hearing on the Compromise Motion ("Second Back-Up Bidder").

The Bidding Procedures will be provided to all creditors and any potential bidders or parties who have shown an interest in the Transfer Claims. In addition, the Court's mandatory form Notice of Sale of Estate Property will be filed with the Court so that notice of the sale of the Transfer Claims may be posted on the Court's website under the link "Current Notices of Sales," thereby giving notice to any potential interested parties.

Based on the foregoing, the Trustee believes that under the circumstances of this case, the Transfer Claims will have been appropriately marketed for bidding.

## III.    ARGUMENT

## A.    Upon Approval by the Court, a Trustee May Compromise a Claim of the Estate

The power of the Court to review and approve settlements is expressly recognized in Federal Rule of Bankruptcy Procedure, Rule 9019(a), which provides:

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Thus, upon notice to the creditors, the United States Trustee, the debtors and indenture trustees, the trustee may compromise a claim of the estate.  The approval of a compromise is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O).  *In re Carla Leather, Inc.*, 50 B.R. 764, 775 (S.D.N.Y. 1985).

The Bankruptcy Code exclusively provides Chapter 7 trustees with certain "strong arm" or avoidance powers which allow the Chapter 7 trustee to reach back and undo certain transactions that took place prior to a debtor filing bankruptcy.  *See* 11 U.S.C. §§ 544, 547 and 548; *see also Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1252 (9th Cir. 2010).  The Ninth Circuit confirmed in *Ahcom* that, consistent with California law, there is no freestanding alter ego claim that would allow a shareholder to be liable for all of a company's debts.  *Ahcom*, 623 F.3d at 1252.  Rather, a general alter ego claim may only be brought if there is an alleged injury to the corporation giving rise to the right of action in it against the defendants (such as a fraudulent transfer claim).  *Id.*  Accordingly, the Transfer Claims are claim of the Estate which the Trustee may compromise.

**B.      The Bankruptcy Court May Approve a Compromise is Fair and Equitable**

The purpose of a compromise agreement between a debtor and a creditor is to allow the parties to avoid the expenses and burdens associated with litigation.  *Martin v. Kale (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. denied sub nom, Martin v. Robinson*, 479 U.S. 854 (1986).   The bankruptcy court has great latitude in approving compromise agreements as long as it finds that the compromise is fair and equitable.  *Id*. at 1382; *see also, Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). Generally, the benchmark in determining the propriety of a settlement is whether the settlement is in the best interests of the estate and its creditors.  *In re Energy Cooperative, Inc.*, 886 F.2d 921, 927 (7th Cir. 1989).  To be approved, the settlement need not represent the highest possible return to the estate, but merely must fall within the "range of reasonableness."  *In re Walsh*

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

11

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

1   *Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1992).  In making this determination, the

2   bankruptcy court need not conduct a trial or even a "mini trial" on the merits.  *Id*.

3       In determining the fairness, reasonableness and adequacy of a proposed settlement

4   agreement, the Court must consider the following factors:

5       (a) The probability of success in the litigation; (b) the difficulties, if any, to be
        encountered in the matter of collection; (c) the complexity of the litigation
6       involved, and the expense, inconvenience, and delay necessarily attending it; (d)
        the paramount interests of the creditors and a proper deference to their reasonable
7       views in the premises.

8   *A & C Properties*, 784 F.2d at 1381; *Woodson*, 839 F.2d at 620.  In other words, the Court must

9   weigh certain factors in order to determine whether the compromise is in the best interests of the

10  bankrupt estate.  *A & C Properties*, 784 F.2d at 1382.

11      The Trustee believes the proposed Settlement/Sale Agreement is in the best interest of the

12  Estate and under the four factors of *A&C Properties*, the Settlement/Sale Agreement should be

13  approved as doing so is the most expedient and cost effective method for resolving the Transfer

14  Claims.

15      **1.    *Probability of Success in Litigation***

16      There is no litigation pending with the Defendants regarding the Transfer Claims.

17  However, the Brundage Action was removed to this Court, which commenced the Adversary

18  Proceeding.  Prior to the Brundage Action's removal to this Court, the Plaintiff filed her Motion

19  for Leave to Amend and File the SAC.  Specifically, the SAC proposed to amend the FAC by

20  adding the Transfer Claims.  The Trustee asserts (and the Court indicated at the Status

21  Conference and the Remand OSC) that the Transfer Claims constitute property of the Estate and,

22  therefore, that only the Trustee may pursue (and compromise) these claims.  Under the terms of

23  the Settlement/Sale Agreement, the Trustee and the Defendants desire to settle and resolve any

24  and all disputes regarding the Transfer Claims[2] in order to eliminate the need for costly litigation.

25

26  [2] In the Brundage Action, the Plaintiff asserts the following causes of action in the Complaint: (1) failure to pay
    overtime wages in violation of Cal. Code Regs., tit. 8, § 11150; (2) failure to pay overtime wages in violation of Cal.
27  Labor Code § 1454; (3) waiting time penalties in violation of Cal. Labor Code § 203; (4) failure to provide accurate
    wage statements in violation of Cal. Labor Code § 226; and (5) violations of Cal. Bus. & Prof. Code § 17200
28  ("Wage Claims").  The Settlement/Sale Agreement does not resolve any of the Wage Claims, which are Pre-Petition
    claims the Plaintiff asserts against the Debtor.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

12

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

1   The Transfer Claims are complex and the Trustee does not believe that success in

2   litigation is guaranteed.  In order to be successful, the Trustee would need to conduct discovery

3   as to the exact transfers made by the Debtor to the Defendants and that JENN Enterprise

4   Corporation ("JENN") is the alter ego of the Debtor.  Based on the circumstances surrounding

5   the Transfer Claims and the facts of this case as the Trustee understands them, the Trustee does

6   not believe the Transfer Claims are protected by any applicable affirmative defenses.  However,

7   the Trustee has been informed by the Debtor that, effective January 1, 2016, a strict set of new

8   laws required the registration and licensing of home health care providers, and affected the

9   Debtor's ability to continue to do business.  The Trustee would have to conduct further discovery

10  to determine why JENN was able to incorporate, register and receive licenses and the Debtor was

11  not.

12  The Trustee understands the risks inherent in any litigation.  The Trustee would have to

13  litigate the disputes with the Defendants, prevail at trial, and perhaps respond to appeals.

14  Accordingly, the probability of success against the Defendant as to the Transfer Claims is fifty-

15  fifty.

16  ## 2.      *Difficulties, if any, to be Encountered in the Matter of Collections*

17  The difficulty of collection weighs in favor of settling.  Assuming that the Trustee were

18  successful in litigation regarding the Transfer Claims and a judgment was entered in the

19  Trustee's favor and against the Defendants, the Trustee would then have to spend time and

20  money collecting on the judgment.  Based on an initial review of possible assets of the

21  Defendants, other than a real property owned by Ms. Saigo, there do not appear to be significant

22  assets from which the Trustee may collect on a judgment.  The Settlement/Sale Agreement

23  allows the Trustee to avoid the costs associated with collection efforts on a judgment while

24  providing funds from the purchase price for the distribution to unsecured creditors.  Accordingly,

25  this weighs in favor of settling.

26  ///

27  ///

28  ///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

13

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

3. **The Complexity of the Litigation Involved, and the Expense, Inconvenience, and Delay Necessarily Attending It**

If the Trustee were to proceed with litigation regarding the Transfer Claims, the Trustee would incur a significant amount of time and money, including engaging in discovery, trying the case and possibly responding to appeals. The issues involved are complex and would require significant time and money to litigate. There is no guarantee that the Trustee will prevail at trial or on appeal.

Instead, the Trustee has been able to reach a settlement early. Rather than delay the matter and incur expenses or resources litigating the Transfer Claims, the Trustee determined that the settlement reached is fair and reasonable. Based thereon, the Trustee believes the proposed settlement and compromise is the most expedient and cost effective method for resolving the Transfer Claims and collecting money for the Estate. This factor weighs heavily in favor of settling.

4. **The Paramount Interest of the Creditors and the Proper Deference to the Reasonable Views**

The Settlement/Sale Agreement should be approved as a means of preserving assets and enhancing the value of the Estate. The Settlement/Sale Agreement allows a resolution of the Transfer Claims prior to the commencement of litigation, avoiding costly and risky activities related to litigation of the Transfer Claims. Settlement therefore results in certainty and substantial benefit to the Estate in that:

- The Estate immediately receives $15,000.00;

- Certainty regarding the receipt of $15,000.00;

- The costs to the Estate to commence litigation regarding the Transfer Claims would have significantly reduced the amount of funds available at the end of this case to pay claims;

- Litigating any dispute at this point would most likely exceed any additional benefit that might be achieved; and

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

1    •    The Settlement/Sale Agreement reached provides certainty and ceases the accrual

2    of unnecessary expenses.

3    In summary, the Settlement/Sale Agreement is based on the Trustee's good business

4    judgment that will benefit the Estate and creditors and therefore approval of the Settlement/Sale

5    Motion is proper.

6    **C.    There is a Good Business Reason for the Sale and the Sale is in the Best Interest of**

7    **the Estate[3]**

8    The duties of a trustee in a Chapter 7 filing are enumerated in Section 704 of the

9    Bankruptcy Code, which provide in relevant part as follows:

10    (a) The trustee shall—

11    (1) collect and reduce to money the property of the estate for which
      such trustee serves, and close such estate as expeditiously as is
12    compatible with the best interests of parties in interest;

13    (2) be accountable for all property received;
                                                    . . .

14    11 U.S.C. § 704.

15    Further, the Trustee, after notice and hearing, may sell property of the estate.  11 U.S.C. §

16    363(b).  Courts will ordinarily approve a proposed sale if there is a good business reason for the

17    sale and the sale is in the bests interests of the estate.  *In re Wilde Horse Enterprises, Inc.*, 136

18    B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983).

19    In this case, the sale is anticipated to net the Estate approximately $15,000.00.  Accordingly,

20    there is a good business reason for the sale and the sale is in the best interests of the Estate.

21    **D.    The Court has the Authority to Waive the Fourteen-Day Stay of Sale**

22    Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the

23    use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days

24    after entry of the order, unless the Court orders otherwise." Fed. Rule Bankr. P. 6004(h).

25    The Trustee desires to close the sale of the Transfer Claims as soon as practicable after

26    entry of an order approving the sale.  Accordingly, the Trustee requests that the Court, in the

27

---

28    [3] Although Local Bankruptcy Rule 6004-1(c)(2)(C) does not require that a memorandum of points and authorities
be filed in support of sale motion, the Trustee is nevertheless submitting one.

**SHULMAN HODGES &**
**BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

15

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

1  discretion provided it under Federal Rule of Bankruptcy Procedure 6004(h), waive the fourteen

2  (14) day stay requirement.

3  

**V.    CONCLUSION**

4  **WHEREFORE,** based upon the foregoing, the Trustee respectfully submits that good

5  cause exists for granting the Settlement/Sale Motion and requests that the Court enter an order as

6  follows:

7  1.    Granting the Settlement/Sale Motion;

8  2.    Approving the Bidding Procedures set forth above for the sale of the Transfer

9  Claims.

10  3.    Approving the Settlement/Sale Agreement, a copy of which is attached as **Exhibit**

11  **"1"** to the Leslie Decl.;

12  4.    Authorizing the Trustee to sell the Transfer Claims on an as-is, where-is basis,

13  without any warranties or representations, to the Buyer (or Successful Bidder) pursuant to the

14  terms and conditions as set forth in the Settlement/Sale Agreement attached as **Exhibit "1"** to

15  the Leslie Decl.

16  5.    Authorizing the Trustee to execute any necessary documents to carry out the

17  provisions as contemplated in the Settlement/Sale Agreement; and

18  6.    Waiving the fourteen day stay of the order approving the sale of the Property

19  under Federal Rules of Bankruptcy Procedure 6004(h).

20  7.    For such other and further relief as the Court deems just and proper under the

21  circumstances of this case.

Respectfully submitted,

**SHULMAN HODGES & BASTIAN LLP**

Dated:  July ___, 2017                */s/ Rika M. Kido*

Leonard M. Shulman
Lynda T. Bui
Rika M. Kido
Attorneys Charles W. Daff, Chapter 7 Trustee
for the bankruptcy estate of J.D.E. Enterprise Corporation
dba Sweet Home Care

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

# DECLARATION

## DECLARATION OF SAM S. LESLIE

I, Sam S. Leslie, declare:

1.      I am the duly appointed, qualified and acting Chapter 7 trustee for the bankruptcy estate ("Estate") of J.D.E. Enterprise Corporation dba Sweet Home Care ("Debtor").  I have personal knowledge of the facts set forth herein, and if called and sworn as a witness, I could and would competently testify thereto, except where matters are stated on information and belief, in which case I am informed and believe that the facts so stated are true and correct.

2.      I make this Declaration in support of my Motion for Order: (1) Approving Settlement and Compromise of Disputes Under Fed. R. Bankr. Pro. 9019 By and Between Chapter 7 Trustee, JENN Enterprise Corporation, Ester Saigo, and Jason Edquilag; (2) Approving the Sale of Property of the Estate Pursuant to 11 U.S.C. § 363(b)(1), Subject to Overbids, Combined with Notice of Bidding Procedures and Request for Approval of the Bidding Procedures Utilized; and (3) Granting Related Relief ("Settlement/Sale Motion").  All capitalized terms not otherwise defined herein shall have the meaning set forth in the Settlement/Sale Motion.

3.      I have read and I am aware of the contents of the Settlement/Sale Motion and the accompanying Memorandum of Points and Authorities.  The facts stated in the Settlement/Sale Motion and the Memorandum of Points and Authorities are true to the best of my knowledge.

4.      I am informed and believe that on October 19, 2016, Plaintiff and the Debtor attended a private mediation session.  It is my understanding that the matter did not settle.

5.      I am informed that, in a series of email exchanges between the Plaintiff's and Debtor's respective counsel in January 2017, Plaintiff requested the Debtor and its counsel stipulate to the filing of a Second Amended Complaint against the Debtor and the Defendants.

6.      I am informed that on May 16, 2017, at the Status Conference and hearing on the Remand OSC, the Court noted that the fraudulent transfer allegations throughout the SAC constituted "property of the estate" and that those issues needed to be evaluated by me.

7.      Through the Settlement/Sale Motion, I request approval of the Settlement/Sale Agreement entered into between myself and JENN Enterprise Corporation, Ester Saigo, and

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

1    Jason Edquilag ("Defendants").  A true and correct copy of the Settlement/Sale Agreement is

2    attached hereto as **Exhibit "1"**.

3        8.    The Defendants have offered to purchase the Transfer Claims for the purchase

4    price of $15,000.00.  The purchase price includes a deposit of $2,000.00.

5        9.    Through the sale, I expect to generate proceeds of approximately $15,000.00,

6    which will benefit the Estate by providing funds for a distribution to the holders of unsecured

7    claims.

8        10.    I believe that good cause exists to grant the Settlement/Sale Motion including

9    approval of the Bidding Procedures to ensure the Estate receives the highest and best offer for

10   the Transfer Claims.

11       11.    Before agreeing to enter into the Settlement/Sale Agreement that is the subject of

12   the Settlement/Sale Motion, I consulted with my counsel about the risks and benefits of

13   commencing litigation.  I consulted with my counsel about the benefits to the Estate which

14   would result from the settlement and sale of the Transfer Claims.

15       12.    For the reasons stated in the Settlement/Sale Motion and the accompanying Points

16   and Authorities, and based on my experience as a Trustee, as well as my consultation with my

17   attorneys, I believe it is in the best interest of the Estate to enter into a Settlement/Sale

18   Agreement.  The expenses to be incurred for commencing litigation against the Defendants

19   would most likely exceed any additional benefit that might be achieved.  The sale of the Transfer

20   Claims provides me with a favorable business opportunity to net a substantial amount of money

21   for the Estate.  Accordingly, and based on my business judgment, I respectfully request that the

22   Court approve the proposed Settlement/Sale Agreement under the four factors set forth by *A and*

23   *C Properties*.

24       I declare under penalty of perjury pursuant to the laws of the United States of America

25   that the foregoing is true and correct.

26       Executed on July ___, 2017 at Los Angeles, California.

27

28                     Sam S. Leslie

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement-Sale Mtn.docx
5318-000/56

# EXHIBIT 1

## SETTLEMENT AND SALE AGREEMENT

This SETTLEMENT AND SALE AGREEMENT ("Agreement") is entered into by and between Sam S. Leslie, solely in his capacity as Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of J.D.E. Enterprise Corporation dba Sweet Home Care ("Debtor"), on the one hand and JENN Enterprise Corporation ("JENN"), Ester Saigo ("Saigo") and Jason Edquilag ("Edquilag," and collectively with JENN and Saigo, the "Defendants"), on the other hand (the aforementioned parties together shall be collectively referred to herein as the "Parties" and individually as a "Party").

## I.    RECITALS

This Agreement is made by the Parties, with reference to the following facts:

1.1    On January 19, 2017, the Debtor filed a Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code, commencing Case No.2:17-bk-10670-BR ("Petition Date"). The Debtor was in the business of providing in-home care for senior citizens and appears to have stopped operating in 2015.

1.2    Sam S. Leslie is the duly appointed, qualified, and acting Chapter 7 Trustee for the Debtor's Estate.

1.3    On its Schedule A/B, the Debtor does not list any real property and/or personal property assets.

1.4    On its Statement of Financial Affairs, Part 3, the Debtor lists a claim for "wages" as set forth in a lawsuit entitled *Brundage v. J.D.E. Enterprise Corporation, et. al.*," Case No. BC607445 (the "Brundage Action"), which is pending in the Superior Court of California, County of Los Angeles ("State Court").

1.5    On its Schedule E/F, the Debtor lists Virginia Brundage ("Plaintiff"), the plaintiff in the Brundage Action, as a nonpriority unsecured creditor for the disputed amount of $250,000.00 (per the Complaint in the Brundage Action).  The only other claimant listed on the Debtor's Schedule E/F is a State of California Employment Development Department claim for taxes in an unknown amount.

### Commencement of the Brundage Action and Filings in State Court

1.6    On January 19, 2016, Plaintiff filed her initial Complaint ("Complaint") in the State Court, commencing the Brundage Action.

1.7    On April 12, 2016, Plaintiff filed her First Amended Complaint ("FAC") in the Brundage Action.

1

EXHIBIT 1

1.8     On June 17, 2016, the Debtor filed its Answer to the FAC.

1.9     The Trustee is informed and believes that on October 19, 2016, Plaintiff and the Debtor attended a private mediation session.  The matter did not settle.

1.10    On November 29, 2016, Plaintiff filed her Amendment to Complaint seeking to add JENN to the FAC as Doe 1.

1.11    The Trustee is informed and believes that in a series of email exchanges between the Plaintiff's and Debtor's respective counsel in January 2017, Plaintiff requested that the Debtor and its counsel stipulate to the filing of a Second Amended Complaint against the Debtor and the newly-added Defendants.  Plaintiff's proposed Second Amended Complaint ("SAC") alleged that the Defendants were liable for Plaintiff's damages as alter egos or successors of the Debtor.

1.12    On January 20, 2017, the day after the commencement of the Debtor's Chapter 7 bankruptcy case, the Debtor filed a Notice of Automatic Stay in the State Court and served it on Plaintiff's counsel.

1.13    On January 23, 2017, Plaintiff filed her Motion for Leave to Amend and File the SAC in the State Court.  The Debtor and Defendants asserted that Plaintiff's filing was a violation of the automatic stay.  Specifically, the SAC proposed to amend the FAC by adding the following allegations:  (1) alter ego allegations, namely that the Debtor was the *alter ego* of JENN and that Saigo and Edquilag were the alter egos of both the Debtor and JENN; (2) successor liability allegations; and (3) allegations that the Debtor had fraudulently transferred its assets to the Defendants and, based on those transfers, that the Defendants are successors of the Debtor.  The Trustee asserts that all of these claims constitute property of the Estate and, therefore, that only the Trustee may pursue these claims (the "Transfer Claims").

## Removal of the Brundage Action to the Bankruptcy Court

1.14    On March 27, 2017, the Debtor removed the Brundage Action from the State Court to the United States Bankruptcy Court, commencing Adv. Case No. 2:17-ap-01213-BR (the "Adversary Proceeding").

1.15    On March 31, 2017, the Bankruptcy Court filed a Notice of Status Conference and Order to Show Cause Re: Removal of Proceeding and Remand ("Remand OSC").  The Status Conference and the hearing on the Remand OSC were scheduled for May 16, 2017 at 2:00 p.m.

///

///

2

EXHIBIT 1

1.16    On April 21, 2017, the Plaintiff filed a Motion for Remand ("Remand Motion") in the Adversary Proceeding.  In the Remand Motion, Plaintiff contends that the Brundage Action was improperly removed from the State Court and that the Brundage Action is not a "core proceeding" as it does not deal with matters concerning the administration of the Debtor's Estate.

1.17    On May 2, 2017, the Debtor filed its Opposition to the Remand Motion ("Remand Opposition").  The Debtor asserted in the Remand Opposition that the Transfer Claims raised in the SAC were issues over which the Bankruptcy Court appropriately must exercise its exclusive jurisdiction.  In other words, any determination that the Defendants are the equivalent of the Debtor would be a core proceeding and fundamental to the administration of the case.

1.18    On May 11, 2017, the Plaintiff filed her Reply to the Remand Opposition ("Remand Reply").  The Plaintiff asserted in her Remand Reply that her successor and alter ego liability allegations would have no effect on the administration of the Debtor's Estate because a successful adjudication of these allegations would result in the Defendants being directly liable to the Plaintiff, not to the Estate.

1.19    The Trustee is informed and believes that on May 16, 2017, at the Status Conference and hearing on the Remand OSC, the Court noted that the fraudulent transfer allegations throughout the SAC constituted "property of the estate" and that those issues needed to be evaluated by the Trustee.  The Status Conference and hearing on the Remand OSC were continued to July 25, 2017 at 10:00 a.m.

1.20    On May 17, 2017, the Court filed an Order to Show Cause Why Case Should Not be Dismissed for Bad Faith Filing, Docket No. 8, in the bankruptcy case ("OSC re Dismissal").  The OSC re Dismissal orders the Debtor to show cause in writing why its bankruptcy case should not be dismissed for bad faith filing and abuse of the bankruptcy process.  In the OSC re Dismissal, the Court noted that the bankruptcy filing seemed to have no legitimate purpose other than to stay the Brundage Action for the benefit of other parties.  The hearing on the OSC re Dismissal was also scheduled for July 25, 2017 at 10:00 a.m.

1.21    The Parties agree that it is in their best interest to resolve all disputes, claims, demands and causes of action arising from or related to the Transfer Claims by way of settlement, rather than through litigation, and therefore it is their intention and desire at this time to settle the Transfer Claims in the manner and upon the terms and conditions set forth in this Agreement, it being specifically understood and agreed that any and all acts which are to be performed pursuant to this Agreement are not to be and will not be construed in any way as a concession and/or admission by any of the Parties of the truth of any of the allegations which have been made against any of the Parties.

///

///

///

Z:\I-J\JDE Enterprise Corporation\Pld\Settlement Agreement v3.docx
5318-000/51

**EXHIBIT 1**

## II.    **AGREEMENT**

**NOW THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION**, the adequacy of which is hereby acknowledged by each Party, and in consideration of the mutual promises and covenants set forth below, the Parties agree as follows:

2.1    <u>Effective Date of Agreement</u>.  This Agreement shall become effective and binding on the Parties hereto upon the entry of an order of the Bankruptcy Court approving this Agreement (the "Approval Order").

2.2    <u>Defendants' Purchase of the Estate's Interest in the Transfer Claims</u>.  Subject to the terms and conditions of this Agreement, on the Closing Date (as defined below), the Trustee shall sell, assign, transfer, convey and deliver to the Defendants, and Defendants shall purchase, acquire and accept from the Trustee, all of the Trustee's right, title and interest in the Transfer Claims as specified herein, as of the Closing Date.

2.2.1    <u>Purchase Price</u>.  The purchase price which the Trustee agrees to accept and the Defendants agree to pay to acquire the Estate's interest in the Transfer Claims is the sum of Fifteen Thousand Dollars ($15,000.00) (the "Purchase Price").  The Purchase Price shall be paid as follows:

2.2.1.1    Concurrently with the execution of this Agreement, the Defendants shall pay to the Trustee, in immediately available funds, a good faith deposit of Two Thousand Dollars and No Cents ($2,000.00) ("Good Faith Deposit").  The Good Faith Deposit shall be made payable to "Sam S. Leslie, Chapter 7 Trustee for the bankruptcy estate of J.D.E. Enterprise Corporation dba Sweet Home Care" and shall be delivered to the attention of Sam S. Leslie, Chapter 7 Trustee, 3435 Wilshire Blvd., Suite 990, Los Angeles, California 90010.  The Good Faith Deposit shall be held by the Trustee and shall only be refundable if the Bankruptcy Court does not approve this Agreement.  If the Bankruptcy Court approves this Agreement, the Good Faith Deposit shall become property of the Estate.  If the Bankruptcy Court does not approve the Agreement, the Good Faith Deposit shall be immediately returned by the Trustee to the Defendants.

2.2.1.2    Within fifteen (15) days of the Bankruptcy Court entering the Approval Order, the Defendants shall pay to the Trustee, in immediate available funds, the balance of the Purchase Price, i.e., the sum of Thirteen Thousand Dollars ($13,000.00) (the "Purchase Price Balance").  The Purchase Price Balance shall be made payable to "Sam S. Leslie, Chapter 7 Trustee for the bankruptcy estate of J.D.E. Enterprise Corporation dba Sweet Home Care" and shall be delivered to the attention of Sam S. Leslie, Chapter 7 Trustee, 3435 Wilshire Blvd., Suite 990, Los Angeles, California 90010.

4

**EXHIBIT 1**

2.2.2    Closing.  The closing of the transactions contemplated by this Agreement (the "Closing Date") shall take place and become effective within fourteen (14) days after the Trustee's receipt of the Purchase Price from the Defendants or the total price bid up and paid by the Successful Bidder (as defined below) or by any back-up bidder(s).  At the Closing Date, the Trustee will deliver to the Defendants (or the Successful Bidder) a certified copy of the Order approving the Compromise Motion and the sale of the Estate's interest in the Transfer Claims.  The certified copy of the Order shall effectuate the sale and transfer.  No other documentation shall be required.

2.2.3    As Is/Where Is.  The Trustee shall sell, assign, transfer, convey and deliver to Defendants (or to the Successful Bidder) the Estate's interest in the Transfer Claims on an "As Is" and "Where Is" basis, without any representations or warranties of any kind, except as expressly set forth herein.

2.2.4    Subject to Overbids.  In order to obtain the highest and best offer for the benefit of the creditors of the Estate, the sale of the Estate's interest in the Transfer Claims shall be subject to the following overbid terms:

2.2.4.1    Potential overbidders must bid an initial amount of at least $2,000.00 over the Purchase Price or a total of at least **$17,000.00**.  Minimum bid increments thereafter shall be $500.00.  The Trustee shall have sole discretion to determine which overbid is best for the Estate and will seek approval thereof from the Court.

2.2.4.2    All Overbids must be delivered in writing and be received by the Trustee and his counsel, Rika M. Kido of Shulman Hodges & Bastian LLP, by no later than 5:00 p.m. on the date that is **three (3) business days prior to the hearing on the Compromise Motion (as defined below).**

2.2.4.3    All Overbids must be accompanied by a deposit ("Overbidder Deposit") in the form of certified funds in the amount of at least Two Thousand Dollars ($2,000.00) payable to the Trustee ("Sam S. Leslie, Chapter 7 Trustee for the bankruptcy estate of J.D.E. Enterprise Corporation dba Sweet Home Care") and delivered to the attention of Sam S. Leslie, Chapter 7 Trustee, 3435 Wilshire Blvd., Suite 990, Los Angeles, California 90010.

2.2.4.4    All Overbidders must also provide evidence of having sufficient specifically committed funds to complete the transaction for the bid amount and such other documentation relevant to the Overbidders' ability to qualify as the buyer and to close the sale and immediately and unconditionally pay the winning bid purchase price at the Closing.

///

5

**EXHIBIT 1**

2.2.4.5    All Overbidders must seek to acquire the Estate's interest in the Transfer Claims on terms and conditions not less favorable to the Estate than the terms and conditions to which the Defendants have agreed in seeking to purchase the Estate's interest in the Transfer Claims as set forth herein.

2.2.4.6    If one or more overbids are received, the final bidding round for the Estate's interest in the Transfer Claims shall be held at the hearing on the Compromise Motion (as defined below) in the Bankruptcy Court in order to allow all potential bidders to have the opportunity to overbid and purchase the Estate's interest in the Transfer Claims.  At the final bidding round to be conducted before the Bankruptcy Court, the Trustee will seek entry of an order, *inter alia*, authorizing and approving the sale of the Estate's interest in the Transfer Claims to the bidder whom the Trustee, in the exercise of his business judgment, has determined to have made the highest and best offer to purchase the Estate's interest in the Transfer Claims, consistent with the Bidding Procedures set forth above (the "Successful Bidder").  The hearing on the Compromise Motion may be adjourned or rescheduled without notice, other than by an announcement of the adjourned date at the hearing on the Compromise Motion in the Bankruptcy Court.

2.2.4.7    At the hearing on the Compromise Motion, the Trustee will seek entry of an order, *inter alia*, authorizing and approving the sale of the Estate's interest in the Transfer Claims to the Successful Bidder.  The hearing on the Compromise Motion may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the bankruptcy court hearing on the Compromise Motion.

2.2.4.8    In the event that the Successful Bidder fails to close the purchase and sale of the Estate's interest in the Transfer Claims within the time parameters approved by the Court, the Trustee shall retain the Successful Bidder's Deposit and will be released from his obligation to sell the Transfer Claims to the Successful Bidder.  The Trustee may then sell the Transfer Claims to the first back-up bidder approved by the Court at the hearing on the Compromise Motion ("First Back-Up Bidder").

2.2.4.9    In the event that the First Back-Up Bidder fails to close the purchase and sale of the Estate's interest in the Transfer Claims within the time parameters approved by the Court, the Trustee shall retain the First Back-Up Bidder's Deposit and will be released from his obligation to sell the Estate's interest in the Transfer Claims to the First Back-Up Bidder.  The Trustee may then sell the Estate's interest in the Transfer Claims to the second back-up bidder approved by the Court at the hearing on the Compromise Motion ("Second Back-Up Bidder").

6

EXHIBIT 1

2.3    <u>Motion for Approval of Compromise</u>.  Upon receipt of a fully-executed copy of this Agreement and all related documents, the Trustee shall promptly file a motion with the Bankruptcy Court to seek approval of this Agreement (the "Compromise Motion").  This Agreement is contingent upon and expressly conditioned upon the issuance of an order by the Bankruptcy Court approving this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019, and the sale of the Transfer Claims pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6004.  Unless and until approved by the Bankruptcy Court, this Agreement is of no force or effect whatsoever.  The Parties acknowledge that this Agreement is the result of extensive good faith negotiations between the Parties and is not to be construed as an admission of liability on the part of any of the Parties hereto, their agents, employees, attorneys or officers, by whom liability is expressly denied.  The Parties are bound by this Agreement, subject only to Bankruptcy Court approval, and waive any right to object to approval of this Agreement by the Bankruptcy Court.

2.4    <u>Jurisdiction of the Bankruptcy Court</u>.  Should any dispute arise regarding this Agreement, the United States Bankruptcy Court for the Central District of California, Los Angeles Division, shall have exclusive jurisdiction to determine the same.  The Bankruptcy Court shall retain jurisdiction to resolve any such dispute even after the case is dismissed.

2.5    <u>Trustee Capacity</u>.  The Trustee is signing this Agreement solely in his capacity as Chapter 7 Trustee for the Estate.  Nothing contained herein shall in any way impute liability to the Trustee, personally or as a member of any professional organization, or anyone acting on his behalf, including but not limited to his counsel, Shulman Hodges & Bastian LLP.

2.6    <u>Further Documentation of Settlement</u>.  The Parties agree that after the Court approves the Compromise Motion, they will execute any and all further and additional documents and take all further and additional steps which may be necessary or convenient to consummate and effectuate the terms of this Agreement, including ensuring good and marketable title, and to accomplish the purposes thereof.

2.7    <u>Releases</u>.  The Parties agree to be bound by the releases set forth below.

### III.    <u>RELEASES</u>

3.1    On the Effective Date, except for the obligations created by this Agreement, the Trustee, solely in his capacity as the Chapter 7 Trustee of the Debtor's Estate, on behalf of himself and his heirs, spouses, offspring, executors, administrators, insurance companies, predecessors, successors, assigns, agents, servants, employees, members, corporations, partnerships, partners, associates, attorneys, representatives, principals, joint ventures, past and present, or anyone else claiming by and through him, do hereby acknowledge full and complete satisfaction of and do hereby fully and forever release and discharge the Defendants, as well as their administrators, predecessors, successors, assigns, agents, servants, employees, members, corporations, insurance companies and their subsidiaries and parent companies, partnerships, partners, associates, attorneys, representatives, joint ventures, trustees, past and present, and each

7

**EXHIBIT 1**

of them, from any and all claims, demands and causes of action of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, whether concealed or hidden, which the Trustee now owns, holds or may hereafter have, own or hold against the Defendants, by reason of any matter relating to the Transfer Claims.

3.2     On the Effective Date, so long as the Defendants are the successful bidder and except for the rights and obligations created by this Agreement, the Defendants, on behalf of themselves and their administrators, insurance companies, predecessors, successors, assigns, agents, servants, employees, members, corporations, partnerships, partners, associates, attorneys, representatives, joint ventures, trustees, past and present, or anyone else claiming by and through them, do hereby acknowledge full and complete satisfaction of and do hereby fully and forever release and discharge the Trustee, both individually and solely in his capacity as the Chapter 7 Trustee of the Debtor's Estate, as well as his heirs, spouses, offspring, executors, administrators, predecessors, successors, assigns, agents, servants, employees, members, corporations, partnerships, partners, associates, attorneys (Shulman Hodges & Bastian LLP), representatives, joint ventures, trustees, past and present, and each of them, from any and all claims, demands and causes of action of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, whether concealed or hidden, which the Defendants now own, hold or may hereafter have, own or hold against the Trustee, by reason of any matter relating to the Transfer Claims.

3.3     It is a condition hereof, and it is the intention of the Parties in executing this Agreement and in giving the releases set forth herein, that the same shall be effective as a bar to each and every claim, demand, and cause of action, matter or thing specified; and in furtherance of this specific intention, the Parties hereby expressly waive any and all rights and benefits conferred upon them by the provisions of Section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

3.4     The Parties represent and warrant that they have been advised to seek advice from independent legal counsel of their own choosing regarding this Agreement and its terms, and understand and acknowledge the significance and consequence of these releases and the specific waiver of Section 1542, and the Parties, and each of them, expressly consent that this Agreement and the releases set forth herein shall be given full force and effect according to each and all of their express terms and provisions, including those relating to unknown and unsuspected claims, demands and causes of action, if any, as well as those relating to any other claims, demands and causes of action herein above specified.

///

8

EXHIBIT 1

## IV.    <u>REPRESENTATIONS AND WARRANTIES</u>

4.1    The Parties hereto, and each of them, separately represent and warrant to each other that they have not heretofore assigned or transferred, or purported to assign or transfer, to any other person or entity any claim or other matter herein.

4.2    The Parties hereto, and each of them, separately represent and warrant to each other that they will execute all documents necessary to carry out the purpose of this Agreement and to cooperate with the Trustee in the expeditious filing of any and all documents and the fulfillment of the terms of this Agreement.

4.3    The Parties hereto hereby warrant and represent that each and every recital and representation contained herein is true and correct to the best of their knowledge.

4.4    The Parties hereto hereby warrant and represent that he or she or it has been duly authorized to execute this Agreement and to undertake the obligations contained herein.

4.5    The Parties represent that they fully understand their right to discuss all aspects of this Agreement with their own attorneys, that they have carefully reviewed and fully understand all of the provisions of this Agreement, and that they are voluntarily entering into this Agreement.

4.6    The Parties to this Agreement shall bear their own costs, expenses, and attorneys' fees, whether taxable or otherwise, incurred in or arising out of or in any way related to the matters released herein.

## V.    <u>MISCELLANEOUS</u>

5.1    <u>Entire Agreement</u>. This Agreement constitutes the entire understanding and agreement between the Parties concerning the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, terms, conditions and representations, written or oral, made by any of the Parties or their agents, concerning the matters covered by this Agreement.

5.2    <u>Modification and/or Amendment</u>.    This Agreement may be amended and modified <u>only</u> by a written agreement signed by all of the Parties hereto, specifically acknowledging and approving of such amendments or modifications.

5.3    <u>Execution of Documents</u>. Each Party agrees to execute all documents necessary to carry out the purpose of this Agreement and to cooperate with each other in the expeditious filing of any and all documents and the implementation and fulfillment of the terms of this Agreement.

///

**EXHIBIT 1**

     5.4   <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto, and each of them, and upon their respective successors, assigns, heirs, partners, agents, officers, corporations, partnerships, partners, shareholders, representatives, and each of them.

     5.5   <u>Controlling Law and Mediation</u>.  This Agreement has been entered into in the State of California, and this Agreement, including any rights, remedies, or obligations provided for hereunder, shall be construed and enforced in accordance with the laws of the State of California.  Any dispute arising out of this Agreement shall first be referred to the Bankruptcy Court mediation panel.

     5.6   <u>Severability</u>.  If any immaterial provision of this Agreement is held, determined or adjudicated to be invalid, unenforceable or void for any reason, each such provision shall be severed from the remaining portions of this Agreement and shall not affect the validity and enforceability of such remaining material provisions hereof.

     5.7   <u>Effect of Headings</u>.   The titles and headings of this Agreement are for convenience and identification only, and shall not be deemed to limit, amplify, or define the contents of the respective sections or paragraphs to which they pertain.

     5.8   <u>Gender</u>.  Whenever in this document the context may so require, the masculine gender shall be deemed to include the feminine and neuter genders, and vice-versa

     5.9   <u>Recitals</u>.  Each term of this Agreement is contractual and not merely a recital.

     5.10  <u>Construction</u>.  This Agreement has been negotiated at arm's length between persons (or their representatives) sophisticated and knowledgeable in the matters dealt with in this Agreement.  Accordingly, any rule of law (including California Civil Code, Section 1654) or legal decision that would require interpretation of any ambiguities in this Agreement against the Party that has drafted it is not applicable and is hereby waived.  The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose of the Parties and this Agreement.

     5.11  <u>Counter-parts</u>.  This Agreement may be executed in one or more counter-parts (multiple signatures), each of which shall be deemed an original, and all of which constitute one and the same instrument.

     5.12  <u>Attorneys' Fees</u>.  All Parties shall bear their own attorneys' fees and costs incurred in connection with this Agreement.  In the event any claim, dispute and/or litigation arises out of this Agreement, the prevailing party shall be entitled to recovery of its attorneys' fees and costs incurred in prosecuting or defending said claim, dispute and/or litigation.

///

EXHIBIT 1

**BY SIGNING THIS AGREEMENT WHERE INDICATED BELOW, I CERTIFY THAT I HAVE READ THE FOREGOING AGREEMENT IN ITS ENTIRETY, INCLUDING CIVIL CODE SECTION 1542 QUOTED IN THE BODY OF THIS AGREEMENT, THAT I FULLY UNDERSTAND ALL OF THE WORDS, LANGUAGE, TERMS AND CONDITIONS CONTAINED HEREIN, AND THAT I AGREE TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS SET FORTH HEREIN.**

Dated: July 10, 2017

Sam S. Leslie, solely in his capacity as the
Chapter 7 Trustee for the bankruptcy estate of J.D.E.
Enterprise Corporation dba Sweet Home Care

**JENN Enterprise Corporation**

Dated: July ___, 2017

By: _____
Its: _____

Dated: July ___, 2017

Ester Saigo

Dated: July ___, 2017

Jason Edquilag

**APPROVED AS TO FORM:**

**SHULMAN HODGES & BASTIAN LLP**

Dated: July 10, 2017

Leonard M. Shulman
Lynda T. Bui
Rika M. Kido
Attorneys for Sam S. Leslie, Chapter 7 Trustee

**LAW OFFICES OF PAUL A. BECK, APC
and COHON & POLLAK, LLP**

Dated: July ___, 2017

Paul A. Beck
Jeffrey M. Cohon
Attorneys for Defendants

11

EXHIBIT 1

BY SIGNING THIS AGREEMENT WHERE INDICATED BELOW, I CERTIFY THAT I HAVE READ THE FOREGOING AGREEMENT IN ITS ENTIRETY, INCLUDING CIVIL CODE SECTION 1542 QUOTED IN THE BODY OF THIS AGREEMENT, THAT I FULLY UNDERSTAND ALL OF THE WORDS, LANGUAGE, TERMS AND CONDITIONS CONTAINED HEREIN, AND THAT I AGREE TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS SET FORTH HEREIN.

Dated: July ___, 2017

_____
Sam S. Leslie, solely in his capacity as the
Chapter 7 Trustee for the bankruptcy estate of J.D.E.
Enterprise Corporation dba Sweet Home Care

**JENN Enterprise Corporation**

Dated: July 4, 2017

By: JASON EDQUILAG
Its: CEO

Dated: July 11, 2017

_____
Ester Saigo

Dated: July 11, 2017

_____
Jason Edquilag

**APPROVED AS TO FORM:**

**SHULMAN HODGES & BASTIAN LLP**

Dated: July ___, 2017

_____
Leonard M. Shulman
Lynda T. Bui
Rika M. Kido
Attorneys for Sam S. Leslie, Chapter 7 Trustee

**LAW OFFICES OF PAUL A. BECK, APC
and COHON & POLLAK, LLP**

Dated: July 11, 2017

_____
Paul A. Beck
Jeffrey M. Cohon
Attorneys for Defendants

11

EXHIBIT 1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**100 Spectrum Center Drive, Suite 600, Irvine, California 92618**

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: 1) APPROVING SETTLEMENT AND COMPROMISE OF DISPUTES UNDER FED. R. BANKR. PRO. 9019 BY AND BETWEEN CHAPTER 7 TRUSTEE, JENN ENTERPRISE CORPORATION, ESTER SAIGO AND JASON EDQUILAG; 2) APPROVING THE SALE OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 363(b)(1), SUBJECT TO OVERBIDS, COMBINED WITH NOTICE OF BIDDING PROCEDURES AND REQUEST FOR APPROVAL OF THE BIDDING PROCEDURES UTILIZED; AND 3) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF SAM S. LESLIE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **July 21, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**COUNSEL FOR DEBTOR/JENN ENTERPRISE CORP., ESTER SAIGO & JASON EDQUILAG:** Paul A Beck    pab@pablaw.org
**COUNSEL FOR DEBTOR/JENN ENTERPRISE CORP., ESTER SAIGO & JASON EDQUILAG:** Jeffrey M
Cohon   jcohon@cohonpollak.com
**COUNSEL FOR CHAPTER 7 TRUSTEE:** Rika Kido    rkido@shbllp.com, avernon@shbllp.com
**CHAPTER 7 TRUSTEE:** Sam S Leslie (TR)    sleslie@trusteeleslie.com, sleslie@ecf.epiqsystems.com;trustee@trusteeleslie.com
**COUNSEL FOR CHAPTER 7 TRUSTEE:** lshulman@shbllp.com
**COUNSEL FOR PLAINTIFF VIRGINIA BRUNDAGE:** J B Twomey    jbtwomey@reyeslawpc.com, spaiz@reyeslawpc.com
**COUNSEL FOR PLAINTIFF VIRGINIA BRUNDAGE:** J.B. Twomey    , spaiz@reyeslawpc.com
**INTERESTED PARTY:** United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **July 21, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Judge's Copy**
Honorable Barry Russell
United States Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012
☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ***Not Applicable***, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 21, 2017 | Anne Marie Vernon | */s/ Anne Marie Vernon* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.